# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and POND
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant CHAS E. PHILLIPS**
**United States Army, Appellant**

ARMY 20220233

Headquarters, 1st Armored Division and Fort Bliss
Robert L. Shuck, Military Judge (pretrial)
Matthew S. Fitzgerald, Military Judge (trial)
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Captain Kevin T. Todorow, JA (argued)[1]; Colonel Michael C. Friess, JA; Lieutenant Colonel Dale C. McFeatters, JA; Major Rachel P. Gordienko, JA; Captain Kevin T. Todorow, JA (on brief); Colonel Philip M. Staten, JA; Major Robert W. Rodriguez, JA; Captain Kevin T. Todorow, JA (on reply brief).

For Appellee: Major Joseph H. Lam, JA (argued); Major Kalin P. Schlueter, JA; Major Justin L. Talley, JA; Major Joseph H. Lam, JA (on brief).

30 January 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Senior Judge:

Appellant raises four issues before this Court, two of which merit discussion but ultimately no relief.[2] Appellant argues the military judge erred by declining to

---

[1] The court heard oral argument on 16 October 2023 at Campbell University Law School as part of the court's outreach program.

[2] We have given full and fair consideration to the issues personally raised by appellant before this Court pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

suppress appellant's statements to El Paso law enforcement officers. Appellant also argues his three convictions for three separate offenses of assault consummated by a battery upon his spouse constitute an unreasonable multiplication of charges. We disagree.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of communicating a threat and three specifications of assault consummated by a battery upon his spouse in violation of Articles 115 and 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 915, 928.

Appellant and his wife, ▮, married in 2018 and had a daughter in the spring of 2019. In mid-August 2019, appellant and ▮ got into a heated argument about money difficulties. ▮ had previously agreed to pay the monthly electric bill but could not afford to do so. Appellant directed her to immediately attempt to earn money by making food deliveries.

Deciding it was too late for food deliveries, ▮ instead traveled to a nearby friend's house to pick up her young daughter. ▮ visited with her friend for approximately thirty to forty-five minutes and returned home. Upon ▮'s return, appellant met her in their garage, took their baby and placed her in a bassinet inside their home, and returned to the garage where the argument about money difficulties immediately resumed.

The argument quickly escalated into physical violence. First, appellant grabbed ▮ and dragged her by her hair (Specification 3 of Charge II). After appellant released her hair, ▮ moved to a different part of the garage where appellant pushed her onto the ground, struck her multiple times, and punched her in the face (Specification 2 of Charge II). Appellant threatened to kill ▮ chop up her body, put it in a bag, and hide her remains in the desert (The Specification of Charge I). After this death threat, appellant stopped striking ▮ but returned to the house to retrieve a green extension cord, which he then used to strike her repeatedly (Specification 1 of Charge II). Eventually, ▮ got away from appellant, left the garage, and ultimately received assistance from friends who called law enforcement officers from the El Paso Police Department.

After speaking to ▮ and observing her injuries, four officers arrived at appellant's home and knocked on his front door. The officers invited appellant outside to discuss his wife's injuries and allegations regarding domestic assault. Asserting a need to watch his baby, appellant declined to step outside to talk to the officers and instead invited the officers into his home. Two officers entered appellant's home while the other two officers remained outside.

2

Once inside, one of the officers told appellant they had seen and spoken to his wife. One officer asked appellant for his side of the story and asked detailed questions about his version of events. During this time, appellant was not handcuffed and the responding officers did not advise appellant of the constitutional rights provided by *Miranda v. Arizona*, 384 U.S. 436 (1966) [hereinafter *Miranda*]. After appellant offered three or four different versions of the event, he told the officers he had pushed his wife to the ground, struck her, and "may have" whipped her with a cord. After this statement, the officers placed appellant under arrest for domestic assault.

At a motion hearing prior to his trial, appellant moved to suppress his above statements because the officers failed to advise him of his *Miranda* rights. The military judge denied the motion to suppress by ruling appellant was not entitled to the protections afforded by *Miranda* when he made his statements to the officers.

After the military judge convicted appellant of all charged offenses, he was sentenced to a dishonorable discharge, confinement for forty months, total forfeiture of all pay and allowances, and reduction to the grade of E-1.[3] The convening authority approved the adjudged findings and sentence.

-------------------

[3] As to appellant's sentence to confinement, the military judge was required to determine an exact "term of confinement" for each offense. *See* Rule for Courts-Martial [R.C.M.] 1002(d)(2)(A). Next, the military judge was required to "state whether [each offense's] term of confinement [was] to run concurrently or consecutively with any other [offense's] term ... of confinement." R.C.M. 1002(d)(2)(B). The military judge sentenced appellant to an exact "term of confinement" for each offense as follows:

The Specification of Charge I (communicating a threat): 8 months of confinement to run consecutively with the term of confinement for all other offenses;

Specification 1 of Charge II (extension cord assault): 18 months of confinement to run consecutively with the term of confinement for all other offenses;

Specification 2 of Charge II (push/punch assault): 14 months of confinement to run concurrently with the term of confinement for Specification 3 of Charge II (hair drag assault) but to run consecutively with the terms of confinement for The Specification of Charge I (communicating a threat) and Specification 1 of Charge II (extension cord assault).

(continued . . .)

## LAW AND DISCUSSION

### *A. Motion to Suppress*

We review a military judge's denial of a motion to suppress evidence for an abuse of discretion. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin*, 58 M.J. 358, 360 (C.A.A.F. 2003)). We do not disturb the military judge's findings of fact provided they are not clearly erroneous or unsupported by the record. *Id.* (citing *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)). We review conclusions of law supporting the suppression ruling de novo, to include whether someone is in custody for the purposes of *Miranda* warnings and whether a confession is voluntary. *Id.* (internal citations omitted).

The Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "To answer the question whether an accused is in custody for purposes of *Miranda*, we consider 'all of the circumstances surrounding the interrogation' to determine 'how a reasonable person in the position of the [accused] would gauge the breadth of his or her freedom of action.'" *Chatfield*, 67 M.J. at 437 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). Relevant circumstances include: the length of questioning, the location of the questioning, the accusatory or non-accusatory nature of the questioning, the amount of restraint on the individual's physical movement, and statements made by officers regarding the individual's freedom to move or leave. *United States v. Hale*, 81 M.J. 651, 666 (Army Ct. Crim. App. 2021).

We assess the totality of the circumstances to objectively determine whether a reasonable person under the circumstances would feel they were not free to leave. *Id.* This assessment, however, does not end our analysis because the Supreme Court has stated:

> [d]etermining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda*. We have . . . instead asked the additional question whether the

---

(. . . continued)

Specification 3 of Charge II (hair drag assault): 10 months of confinement to run concurrently with the term of confinement for Specification 2 of Charge II (push/punch assault) but to run consecutively with the terms of confinement for The Specification of Charge I (communicating a threat) and Specification 1 of Charge II (extension cord assault).

relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. "Our cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody."

*Howes v. Fields*, 565 U.S. 499, 509 (2012) (citing *Maryland v. Shatzer* 559 U.S. 98, 112 (2010)).

As discussed in-depth below, we find the "relevant environment" surrounding the making of appellant's statements did not contain the "same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*.

Four officers arrived at appellant's home, knocked on his front door, and asked him to step outside to speak with them. Appellant declined this invitation and, instead, inserted his level of control over the situation, requesting two of the four officers, Officers ███ and ███ enter his home for a discussion. The officers complied with appellant's request, did not fully enter his home, and "stayed around the entrance of the door."

Appellant was not placed in handcuffs or touched by the officers. The officers did not draw their weapons. Officer ███ testified appellant was "temporarily detained," which she described as similar to a vehicular traffic stop, stating he "was not free to leave until we felt we had the information for our investigation to either say he did do this or he did not do that." Officer ███ testified, however, appellant possessed the ability to move freely within his own home and, for example, could have left the front entrance and gone into the kitchen to get a glass of water. *Cf United States v. Catrett*, 55 M.J. 400 (C.A.A.F. 2001) (finding appellant subjected to *Miranda* custody when he was directed by officers to remain, with an officer present, in appellant's living room that he could only depart if an officer accompanied appellant).

As to the officer's investigative role, Officer ███ asserted the purpose of asking appellant for his side of events was because "we have had females where they may have technically injured themselves . . . [but injuries and an allegation] doesn't necessarily mean that what she is saying is 100 percent accurate." Officer ███ testified it was her job to determine "what exactly happened" because not only could a female victim's version of the event contain inaccuracies but appellant could have also had justifiable reasons, such as self-defense, for his actions.

Only after appellant provided different versions of the event, the military judge found the officers "likely" used "accusatory questioning" when confronting appellant "with the inconsistencies of his version of the incident [as compared] with the injuries found on his spouse." Despite this questioning, the military judge

found, and we concur, appellant "never asked to leave or requested the officers to leave his home. The officers never threatened [appellant] or used force in any way. After the police questioned [appellant] for less than an hour about what had occurred, [appellant] made incriminating statements about what he had done to his spouse."

Even assuming appellant's freedom of movement was curtailed to the location of his entire home,[4] the overall "relevant environment" at the time he made his statements to the officers did not "'sufficiently impair [appellant's] free exercise of his privilege against self-incrimination to require that he be warned of his [*Miranda*] constitutional rights.'" *Howes*, 565 U.S. at 509-10 (citing *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)). Appellant asserted control over the location of the discussion in his home, he was never handcuffed or restrained during the discussion, and the discussion took less than an hour.[5] Additionally, we considered the difference, as recognized in *Miranda*, between questioning occurring in appellant's home, as opposed to the police station. As stated in *Miranda*, a suspect "[i]n his own home . . . may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his home." *Miranda*, 384 U.S. at 449-50.

---

[4] We note the parties heavily disputed whether the military judge was clearly erroneous in his ruling that found appellant was "not free to leave" but he "was never told this information." Although the record is clear the officers did not tell appellant he was "free to leave," it is less clear on the inverse question: did the officers affirmatively tell appellant he was *not* free to leave? Ultimately, whether the military judge's finding of fact was clearly erroneous does not aid our analysis because we assume, arguendo, that a reasonable person in appellant's shoes would have known they were not free to leave the home and disregard the officers upon their arrival. Similarly, as reasoned by the Supreme Court, a reasonable person knows by implication they are not free "to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so." *Howes*, 565 U.S. at 510 (citing *Berkemer*, 468 U.S. at 436). A review of appellant's subjective understanding, although not determinative to our analysis, clearly indicates he was capable of assessing the situation as an objectively reasonable person because we agree with the military judge's findings of fact that, at the time appellant made his statements, he was a smart and mature twenty-eight-year-old non commissioned officer who possessed approximately nine years of military service, a "Bachelor of Science Degree," and an "ASVAB General Technical Score of 111."

[5] Appellant testified the questioning lasted less than thirty minutes. However, the military judge adopted as his findings of fact the officer's time estimate of less than an hour which, ironically, was more favorable to appellant.

### B. Unreasonable Multiplication of Charges

We review a military judge's denial of relief for unreasonable multiplication of charges [UMC] for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012). Courts apply a five-part test to determine whether the government has unreasonably multiplied charges:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> (4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004) (citing *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)).

Although appellant objected at trial, we find the four other *Quiroz* prongs favor the government and the military judge did not abuse his discretion denying appellant's UMC motion as to his conviction of three separate assaults by battery upon his spouse.

Appellant committed separate and distinct criminal acts. Act 1: he dragged his wife by her hair, tearing some of her hair out of her head in the process, across the garage floor. He then released her, which presented him with an opportunity to cease and desist his criminal activity. This he did not do. She then moved to a different part of the garage. Act 2: he then pushed his wife to the ground, struck her multiple times, and punched her in the face. The government combined these acts into a single offense and did not separately charge the push, the punch, or every single strike. Appellant's combined acts left his wife with a golf-ball sized lump on her head. He then left the garage and went into their home – a further opportunity to cease and desist his criminal activity that he did not take. Act 3: he located a green extension cord within the home, returned to the garage, and struck her with the cord multiple times, leaving whip marks on her shoulder, back, and lower leg.

7

Appellant applied three different means of force (*actus reus*) – dragging, pushing and punching, and whipping with a cord. Appellant's wife received three different types of injuries from each of appellant's separate criminal acts – hair torn out of her head, a golf-ball sized lump on her head, and whip marks on multiple locations on her body. Appellant had an opportunity between each different *actus reus* to adjust his criminal *mens rea,* which he declined to do each time.

Charging appellant's acts as three separate offenses in this situation does not exaggerate his criminality or establish prosecutorial overreach. This is the opposite situation of appellant engaging in "an uninterrupted attack" with a metal stool and being charged with two separate specifications of aggravated assault for injuring his wife's head and elbow after the receipt of multiple blows from the stool. *See United States v. Clarke*, 74 M.J. 627, 628 (Army Ct. Crim. App. 2015) (finding the factual predicate of appellant's "uninterrupted attack" warranted consolidating the two specifications into one specification of aggravated assault).

Further, appellant did not face an unreasonable increase in his punitive exposure. Each offense carried a maximum sentence to confinement of two years. *See Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 77.d.(2)(f). He received ten months of confinement for the hair-drag assault and fourteen months of confinement for the push and punch assault which the military judge then ordered to run concurrently. Stated differently, because the military judge ruled the two offenses were concurrent for sentencing, appellant was only required to serve fourteen months of confinement for these two individual offenses.[6]

Appellant received eighteen months of confinement for whipping his wife with an extension cord. This sentence to confinement stood alone. We find this sentence to confinement, however, did not *unreasonably* increase his punitive exposure. Between the pushing/punching assault and the whipping with the cord assault, appellant threatened his wife's life by telling her he was going to chop her up and put her in a bag and no one would know she was missing.

Appellant's wife testified "he kept saying the whole time that I don't understand what is going on here. So he feels like he needs to give me a little incentive. So he stopped and left for a little bit and went back to the house. And then when he came back, this is when he came back with a green extension cord." As ▮▮▮ lay on the garage floor, curled up, while being whipped multiple times with

---

[6] We find the military judge's decision to adjudge concurrent confinement sentences for these two separate offenses, under the facts of this case, was neither mandated nor unreasonable, but within the broad range of his judicial discretion to fashion an appropriate sentence. *See* R.C.M. 1002 (d)(2)(B) discussion, ("A military judge may exercise broad discretion in determining whether terms of confinement will run concurrently or consecutively.").

8

the cord, she thought appellant was going to achieve his death threat and it "was probably going to be it for me . . . [and] I was going to die that night."

Having departed the garage, appellant had an increased opportunity to reevaluate his *mens rea* while searching his home for the extension cord – a weapon beyond his own hands – but he decided to assault his wife again. He escalated the abuse. We see this offense as more egregious than the previous two assaults and it was not unreasonable for appellant to receive a separate sentence to confinement for this offense.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge PENLAND and Judge POND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

9